*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* STENNETT, Minors.

UNPUBLISHED
November 22, 2022

Nos. 360081; 360084
Wayne Circuit Court
Family Division
LC No. 2001-404727-NA

Before: GLEICHER, C.J., and SERVITTO and YATES, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother, M. Stennett, and respondent-father, B. Stennett, appeal as of right the trial court's order terminating their parental rights to the minor children, CS and LS, pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). Respondents both argue that the trial court erred when it found that termination of their parental rights was in the children's best interests. For the reasons set forth below, we affirm.

## I. FACTUAL BACKGROUND

Respondents, who have been together for more than 20 years and married for the last 13 years, have three children: CS and LS, the two children at issue in this appeal, and a now-adult daughter, RH.[1] Child Protective Services (CPS) in both Michigan and West Virginia investigated the family for abuse and neglect and in 2014, after LS tested positive for THC at birth, CS and LS were made in-home court wards for six months. During that time, respondents were ordered to participate in and benefit from a treatment plan. When their progress was deemed sufficient, the court terminated its jurisdiction in July 2014.

---

[1] Respondents first came to the attention of Child Protective Services shortly after RH's birth in 2001. Respondent-father voluntarily relinquished his rights to RH and, following a hearing the court terminated respondent-mother's parental rights to RH. The trial court found that statutory grounds to terminate respondent-mother's parental rights were established because of continued substance abuse, abandonment, and failure to benefit from services.

In 2016, the family again came to the attention of CPS after the police were called to the home in response to a domestic violence complaint. When respondents refused to cooperate with CPS, the Department of Health and Human Services (DHHS) filed a petition in April 2017, seeking termination of respondents' parental rights. In August 2017, after a hearing on the petition, the trial court found that statutory grounds existed to terminate respondents' parental rights, but found that termination was not in the children's best interests. Consequently, the court dismissed the permanent-custody petition, made the children temporary wards of the court, and ordered respondents to participate in and benefit from a treatment plan designed to improve their parenting skills and address mental health, substance abuse, and domestic violence issues. During the four years that followed, respondents were referred and re-referred for a multitude of services and the court, once again, denied another permanent-custody petition and permitted respondents additional time to work toward reunification.

In October 2019, after the children had been in care for more than two years, DHHS filed yet another petition seeking termination of respondents' parental rights. A hearing on this petition was delayed approximately two years because of COVID-19 pandemic restrictions and respondents' insistence on an in-person hearing. Ultimately, in October 2021, respondents entered pleas of admissions and stipulated that statutory grounds existed to terminate their parental rights. The court then conducted a best-interest hearing, following which it found that, after four years of being court wards, termination of respondents' parental rights was in the children's best interests. This appeal followed.

## II. ANALYSIS OF THE ISSUE

On appeal, respondents do not directly contest that statutory grounds existed to terminate their parental rights. Instead, both respondents argue that the trial court erred when it found that termination of their parental rights was in the children's best interests. Additionally, in the context of her best-interest argument, respondent-mother asserts that DHHS failed to make reasonable efforts toward reunification. At the outset, both respondents have waived any argument related to the adequacy of the services offered and the existence of statutory grounds to terminate their parental rights. Challenges to the adequacy and reasonableness of services relate to the sufficiency of the evidence in support of a statutory ground for termination. *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). Both respondents entered pleas of admission and stipulated that statutory grounds existed to support termination of their parental rights. They elected to proceed to a contested hearing regarding the children's best interests. Neither respondent claims any irregularity with the plea process, nor have they ever sought, even on appeal, to withdraw their pleas. Accordingly, through their unchallenged pleas, respondents have waived any claim of error related to the reasonableness of petitioner's efforts toward reunification or the existence of statutory grounds for termination of their parental rights. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005).[2]

---

[2] In any event, respondent-mother's claim that DHHS failed to make reasonable efforts toward reunification is not supported by the record. Respondents were offered services in 2004, before their parental rights to RH were terminated. They were again offered services in 2014 when CS and LS were in-home wards. After these two children were removed from respondents' care in

Accordingly, on appeal, both respondents are limited to challenging the trial court's findings regarding the children's best interests. After reviewing the record, we conclude that the trial court did not err in this regard.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id.* at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App at 129.

When considering the children's best interests, the trial court weighed several factors. It concluded that because respondents had not meaningfully participated in and benefited from the treatment plan, the children would be at risk of harm in respondents' care. Although the DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Further, "[n]ot only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). In this case, the trial court's findings are consistent with the oft-quoted legal principles that "[a] parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody," *In re White*, 303 Mich App at 710, and "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id*. at 711.

---

2017, respondents were again offered services designed to remove the barriers to reunification. Moreover, the court transferred the matter to its active-efforts docket, where respondents were offered more intensive assistance and court supervision. Finally, when it appeared that respondents were on the precipice of having their parental rights terminated, the court twice found that there existed statutory grounds to terminate their parental rights, but it declined to do so. As a consequence, respondents were granted an extraordinary amount of time to participate in and benefit from services. There is no support in the record for respondent-mother's claim that reasonable efforts toward reunification were not made.

Overwhelming evidence supports the trial court's finding that the children would be at risk of harm in respondents' care. CS and LS were in-home court wards for six months in 2014. During this time, respondents were provided with services to improve their parenting skills and address domestic violence, mental health, and substance abuse issues. When the children were removed from respondents' home in 2017, respondents were again provided a multitude of services designed to remove these same barriers to reunification. Services included, among other things, parenting classes, substance abuse treatment, individual counseling, domestic violence counseling, family therapy, supervised and unsupervised parenting time, and drug screens. Respondents were offered more hands-on assistance through a parent partner and a court appointed special advocate. More intensive court reviews were available and all parties were held more accountable when the case was transferred to the court's active-efforts docket. Further, respondents were granted an extraordinary amount of time to work toward reunification. Despite respondents' frequent early termination from services, DHHS continued to make re-referrals in an effort to encourage respondents to engage in their treatment plan. Notwithstanding these efforts, after four years of services and court oversight, respondents were in no better position to parent their children than when they were removed from respondents' care in April 2017.

Respondents simply could not maintain any forward momentum. At the time of termination, both respondents had entered pleas in which they admitted that, except for attending parenting time, they were not in compliance with any other component of their treatment plan. At the time of termination, respondents lacked suitable housing and there was no evidence that respondents had meaningfully addressed their poor parenting skills and their mental health and substance abuse issues. Indeed, at the December 2021 best-interest hearing, a caseworker testified that respondents had not been in compliance with their treatment plan since the court had denied an earlier permanent-custody petition in December 2019. Respondent-mother had not submitted a drug screen in the previous two years and, since January 2019, the caseworker had referred and re-referred respondents to counseling 11 times. At the time of termination, respondents were not consistently attending therapy. Indeed, they had not been in counseling in the preceding three months. Moreover, there was no evidence that respondents would make meaningful progress anytime soon.

The Clinic for Child Study clinician who evaluated respondents before the best-interest hearing noted that the respondents still lacked insight into the reasons why the children came into care and why, after four years, they continued to be under the court's jurisdiction. Respondents were simply unwilling or unable to put their children's needs ahead of their own. Accordingly, there is overwhelming evidence to support the trial court's finding that respondents would neglect the children if they were returned to respondents' care.

As noted by the trial court, the children were thriving in their separate foster homes and both sets of foster parents had expressed a willingness to adopt the child in their care. Further, the foster families had facilitated sibling visits between CS and LS and indicated that they would continue to do so if parental rights were terminated. When balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. *In re Olive/Metts*, 297 Mich App at 41-42. CS and LS were placed in stable homes where they are progressing and this progress would likely continue because the foster parents were willing to provide permanency for the child in their care.

Respondents nevertheless both assert that because they loved their children and a parent-child bond existed, the trial court erred when it found that termination of their parental rights was in the children's best interests. While the court found that a bond existed, the evidence established that the quality of the bond was poor. The caseworker explained that the bond between respondent-mother and CS was not a mother-daughter bond, but rather a friend-to-friend relationship. Further, CS, 15 years old at the time of the termination hearing, revealed that she did not look forward to visits with respondents and she wished that the frequency were reduced. Indeed, CS expected that respondents would cancel visits, so when they did, it was not upsetting to her. The caseworker further opined that no bond existed between LS and respondent-mother. LS had reported that he did not like the foul language that respondents used and he was scared to bring up difficult topics with them. More recently, LS reported that he was scared to be around respondents because he was remembering the reasons that brought him into care. Regarding the bond between respondent-father and the children, the caseworker found that the bond was not a constructive one. While the children enjoyed seeing respondent-father, they did not ask to visit or speak with him outside of parenting time. Considering the foregoing, the trial court did not clearly err by finding that any bond that existed did not outweigh the children's need for a safe and stable home where their needs were being met.

The court considered the children's need for permanency, finality, and stability, recognizing that the children had been removed from respondents' care for more than four years. The proceedings that culminated in the termination of respondents' parental rights in December 2021 were the second time that the children had been wards of the court. Respondents' inability to improve their parenting skills and address mental health and substance abuse issues was taking its toll on the children. CS was old enough to express clearly her desire for the matter to be concluded. LS was confused, scared, angry, and frustrated. He described having two sets of parents: his visiting parents and the parents he lived with. The trial court did not clearly err when it found that the children had been made to wait entirely too long for stability, permanency, and finality and that neither respondent was in a position to provide the children with stability and permanence.

Based on the extensive record, the trial court did not clearly err during the best-interest phase of the proceedings. Termination was the only avenue by which to ensure that the children's needs would be met and that that they would achieve stability, permanency, and finality. Accordingly, the trial court did not clearly err when it found that a preponderance of the evidence demonstrated that termination of respondents' parental rights was in the children's best interests.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Christopher P. Yates

-5-